The second case for argument is United States v. Anthony Ward Mr. Rush, when you're prepared, please proceed May it please the Court, Counsel? Your Honors, I'm going to dive into the first element or the first issue for this case, and that's whether there was sufficient evidence presented to the jury that an individual by the name of Kyle Seid had suffered a serious bodily injury to support the jury's finding of guilty on the distribution of controlled substance. In order to better understand that, I need a brief recitation of the facts. On March 15, 2022, Kyle Seid was found in his bed by his girlfriend, passed out and unresponsive. She took him to the shower, turned the water on, and another individual in the house called 911. By the time the police had arrived, Mr. Seid had become responsive either through the shower or through the door. Mr. Seid had been in a car accident several years ago and suffered from a seizure disorder. As part of that disorder, he would have up to multiple seizures per week, but often had seizures all the time. When the police arrived, they asked Mr. Seid what's going on, and he said, hey, I'm having a seizure. His girlfriend spoke to the officer and said, he's having a seizure. He was reviewed by an EMT who took a look at him and said, appears to be oriented to person, place, and time, was in no acute distress, had a normal blood pressure and pulse, and he signed a consent to waive all further treatment, and they left. The police continued to talk to them about drug use, and several months down the line, my client was arrested and related to this charge. Now, at trial, they presented the testimony of the EMT who said that he could not determine whether it was a seizure or a drug overdose. Counsel, isn't it, is it disputed that his condition improved after administration of Narcan? It also improved after administration of the shower. Now, the problem here is that just because a person's given Narcan, it doesn't determine because a person will come out of a seizure whether given Narcan or not given Narcan. So the but-for test of Baragi would tell us that we need to determine that that was the source, or that was the cause of the serious bodily injury, and that he had serious bodily injury. Whether he had been, if he had had a seizure and been given Narcan, he would have come out of it anyhow. So at trial, they presented the testimony of Dr. Hobby. Now, Dr. Hobby had never met Mr. Seid, he had never seen Mr. Seid, he had no medical reports to review, Mr. Seid had not went to a hospital, and Mr. Seid had told the officers that he had suffered from a seizure. In order to determine whether a person had a seizure or an overdose, medical testing would be required, blood work would be required. And the testimony that was presented at trial from Dr. Hobby was that he could not determine to a medical certainty whether it was a seizure or whether it was an overdose. And he had not even seen the body-worn cameras. So no review of medical records, no review of lab tests, had never seen the individual, didn't even know the medical history of this individual. And at trial, he watched the tape, and at the end of watching the tape, could not determine to a medical certainty which had occurred. Now, in all of the cases before the court that the court has reviewed, if you're talking about Kathy or Allen or Myers or Lewis, in each of those cases, the court relied upon the but-for test being supplied and tested to beyond, testified to beyond a reasonable doubt by medical experts. And Lewis... What about the lay testimony? Wasn't there lay testimony about his physical reaction and why they dragged him into the shower, that there would be different physical, I guess, manifestations if it were a seizure versus an overdose? And that it was more like an overdose? Well, first, there was no individual who had witnessed him. All we have is the body cam footage of him up going, ah, like this. So all we have from that testimony is the testimony of the girlfriend saying he was unresponsive and that they administered Narcan. And did the girlfriend testify that there was any seizure-like behavior or conduct? Presumably she had seen a seizure before. She had testified that she had told the officer that he was having a seizure. So I don't think she's qualified to provide the medical expert opinion that this court has noted in each of those four cases. So your position is even whatever she testified to, it isn't enough... Correct. ...in order to establish this but-for. Yeah. In Lewis, the court said, Expert medical testimony by a medical professional established, beyond a reasonable doubt, the but-for test. In each of these cases, Myers, Cathy, Allen, the court keeps going back to, we have a medical expert testifying that we've met the but-for test that the jury could rely upon. Here, we have nothing. So how do you prove a but-for? What's the effect of the presence of Dr. Hobby's testimony in the record? Was that something that was an error to admit to the jury to consider? No, because his testimony in the end is, I can't testify to agree the degree of medical certainty as to which of these occurred. He's honest. He says, I don't know which of these occurred. So that essentially results in, I mean, it's favorable to the defense, but confusing. But in the end, he does say, I don't know which, I can't tell you what occurred, because I wasn't there, I didn't see it, I'm reviewing a videotape, there's no medical records, he didn't receive medical treatment, I don't even know what his past medical history is. He did testify about the characteristics and differences between a seizure and a drug overdose. He did, but you still can't overcome the medical, if a doctor cannot tell you to a degree of medical certainty, then how do you get beyond reasonable doubt? No, so have we ever explicitly made that holding? I mean, I think you've cited cases where we've relied, at least in part, on medical testimony. Is there a case that says absent testimony by a physician to a medical degree of certainty, or I forget what term you used, that there's insufficient evidence for a jury verdict? No, but I took the exact opposite of that. I didn't find that case and I was looking for it, but I looked through all of the circuits to see if there was any such decision. And in each of these cases that I've reviewed, it's always had the testimony of a medical expert. For instance, in this case, the United States v. Myers said, we have expert medical testimony and a spoon located right next to this person. You know, this is an instance where the medical experts would tell you, the EMT would tell you, breathing normally, in no acute distress, orientated to person, place, and time. I can't tell you what he had. It doesn't get any better than that, you know, as far as honesty goes. If they can't tell you, how would a jury conclude, beyond a degree of medical certainty, that this had occurred? I haven't found any case in this circuit. I've looked in other circuits and I simply don't see any precedent where we can dispense with expert medical testimony at a very, very, very egregious increase in the amount of time. I think that's why we do that and require an expert opinion, is because this isn't something that'll lay a person. They have no, nobody on the jury has any experience or medical experience, presumably, with what a seizure looks like and what a overdose looks like. And I think that Dr. Hobby does testify in there that if he was administered Narcan in a seizure, he would still come out of it. So it doesn't make a difference. It's, you know, it's whether the Narcan was needed or not needed. Seizure versus overdose, he's going to come out of it. So, and there's no specific characteristics that were presented to the jury, because the tape begins when he's in the shower standing up. Now, going to the second issue, Mr. Ward is challenging the destruction of evidence or the failure to preserve evidence here, and his lack of a jury instruction regarding that. Mr. Ward was pulled over in a car. The car was not owned by him. It was owned by another individual whose paperwork and drugs were found in that car. There were two bags in the car. One of the bags had drugs, the other bag did not. And in one of the bags, there was a prescription found not with my client's name on it. There was ID found, I believe, in the bag, and the bags were not preserved. It was requested that the bags be kept, but law enforcement allowed the drugs. Were the bags left in the vehicle? Is that what happened, or is there evidence in the record of what happened to them? There's a 45-minute stop, and throughout that, my client is attempting to get to one of the two bags to get some items. The car is not owned by my client. It's owned by a third person who isn't even there, and the car is released to yet another driver of this car, and it simply goes off down the road with all the evidence. So when you have a car that has numerous items in the trunk, has multiple bags, has drugs that have been found next to the paperwork of the owner of the car, it would seem to me that if a defendant is requesting, I need those bags saved as evidence, I want those bags saved, and they simply allow it to go down the road, at a minimum, at a minimum, he should be allowed to get a jury instruction on the failure to preserve that evidence, which he requested and was denied. He was also requested to get the operational and procedural manual for law enforcement, which was reviewed in camera, to present to the jury and say, okay, if you won't allow me that, at least allow me to present to the jury the fact that law enforcement's standard operating procedures are to keep evidence. He could have tested the hair in the bag. He could have tested numerous items that were in the bag. To this day, we have no idea what were in those two bags, and it seems to be the primary evidence within the case was these two bags that were allowed to go down the road. Additionally, if you don't allow the jury instruction and you don't allow the bags to be kept and you don't allow the DNA testing, you should at least allow the operational and procedural manual to explain to the jury, hey, what is the effect of not keeping this evidence? Was law enforcement supposed to keep this evidence, and what effect did that have on the case? And all of those were denied. On to the next issue, whether the motion for he had filed a stop motion in this case. The car was stopped. It was stopped by law enforcement believing that there was a driver of that car named Brittany Brazeal. It turned out Brittany Brazeal was not the driver, or excuse me, Maranza Ball. It turns out that Maranza Ball was not driving the car. They used a failure to stop at a stop sign to stop the car initially leaving the hotel, but when law enforcement learned, and they were basing their stop based on some additional information, that they believe that this car was drug-related because of Maranza Ball, when they learned that Maranza Ball wasn't the driver, the car should have been ticketed and allowed to go. But that's not what happened here. The car was held, and my client was held for 45 minutes of questioning. Repeatedly, my client asked to leave the scene and was not allowed to leave, and ultimately, after 45 minutes, he was taken down and arrested. This extended stop, the United States relies on the fact that they believe that there was a drug investigation going on that justified the further interrogation of my client. But when they realized that the individual driving that car who they believed to be drug-related wasn't that individual, that should have ended the inquiry, the ticket should have been issued, and they should have been allowed to leave. I'm going to reserve the rest of my time. Thank you, Mr. Rush. Ms. Rich. Thank you. May it please the Court, Counsel. I'll start where Mr. Rush started, and that is the issue of Mr. Sayde's overdose. There was medical testimony in this case presented to the jury. The responding paramedic and the responding patrol officer and Dr. Hobby all testified to their training and experience on what opioid overdoses look like, what are the symptoms, and then what the effect of Narcan is on those symptoms. Dr. Hobby reviewed information about what the people who were with Mr. Sayde observed during his overdose, and also police officer reports. He viewed the body cam footage during trial, and all of those statements consistently were that Mr. Sayde experienced an opioid overdose and not a seizure on that day. But on the ultimate question, was there any medical testimony or police testimony that, to a degree of medical certainty, as your colleague has indicated, that this was an overdose? Well, yes, Your Honor, in that the response, so the people at the scene, it was Mr. Sayde, Mr. Anderson, who was the one who supplied it directly to him, from Ward to Young to Anderson to Sayde. Mr. Sayde's girlfriend, Stephanie Kohlhoff, and also his ex-wife, Tamika Loftin, and they all described him as not breathing, his lips were blue, and... And in the normal case, or the usual course, that seems to be enough, but here where you have a defendant who has a seizure condition with frequent seizures, doesn't that make it more difficult? In other words, if Dr. Hobby couldn't look at the tape and say, to a degree of medical certainty, that this was an overdose, how could a jury reach the same conclusion beyond a reasonable doubt? Dr. Hobby did say that this was, that nothing about this was consistent with a seizure. Everybody, Sayde said, I did not have a seizure that day. Everyone in the house said it was not a seizure, and they were all used to him having seizures. They knew what it was like. And his ex-wife, or excuse me, his current girlfriend, had a seizure activity herself. They were all very familiar with that and said that was not this. And Dr. Hobby said everything they described is not consistent with a seizure. And they all, Stephanie Kolhoff, I gave him Narcan, and Travis Anderson noted that Mr. Sayde received Narcan, and he recovered from his state, which was unconscious, not breathing, lips blue, after receiving the Narcan. And so when you couple that with the medical information and testimony that Dr. Hobby provided, as well as supported by... There was no dispute that he could have recovered if it was a seizure. Recovery could have occurred spontaneously or on its own without Narcan. If it was a seizure activity? Yes. Well, there was no, I mean, that wasn't part of any evidence at trial, because no one, no one said that this was a seizure. And all of the evidence and medical testimony was, everything that was described is that was an opioid overdose. And Kyle Sayde said, I died that day. I was dead. And that's what everyone basically described. Could the record show their testimony about when they ingested the narcotics? Yes. He and Stephanie Kolhoff used it together. Travis Anderson was there, saw them use it. And he had used with Mr. Sayde earlier, like an hour or so before that. And so I think here, the medical, there is the medical testimony. But going to your question, Judge Kobus, to Mr. Rush, this Court has never gone so far as to say that if you don't have some sort of medical treatment, like a blood draw or something like that, that that is not going to be enough. A jury gets to decide, based on the standard of proof, if the testimony that was presented was enough for them to know that there was serious bodily injury. And the jury was properly instructed here as to the definition of serious bodily injury, including a substantial risk of death, protracted or obvious disfigurement, or protracted loss or impairment of the function of a bodily member. And Dr. Hobby testified to the effects on Mr. Sayde's body as a result of an opioid overdose. And that he would have died, that all reports were that he would have died but for the Narcan he received. So the defendant just is too broadly stating what this and other courts have said is required to meet the burden of proof. Here it was undoubtedly met by all of the testimony of all the people present, that this was just not a seizure, and that all of the symptoms described were that of an opioid overdose. The defendant has not, none of the cases that were cited have gone any further than that. And I don't think that that should be necessary, given that a jury will be able to evaluate that evidence for what it is. And if there should be medical testimony and they don't have that, then they should find the person not guilty. But here they had everything that they needed from the descriptions of the four people who saw him overdose. The other issue that went along with that... Well, I guess, so the defendant then, he was arguing next the car stop. And that kind of combines issues two and three in the brief. So I'll start with issue three, which was the actual car stop itself. That day, officers had spoken to Travis Anderson, and based on the information he provided, they were conducting a surveillance on the hotel, and they used the ruse to get Mr. Ward, who they did not know at the time, positively know his identity. And Maranza Ball and Brittany Brazil are visually very similar. And all, I think, three different officers testified to that in the two different suppression hearings and at trial, that visually they looked the same, so they thought that that's who maybe they were pulling over. Turns out it was Brittany Brazil. But throughout the course of the interaction with law enforcement during the stop, law enforcement never was on scene able to identify Mr. Ward. He provided false identification throughout. He buried his story about what belonged to him. And so his, he's saying that the bags are not his. But there's numerous bags in the car, and law enforcement on surveillance had watched him place, come out of the hotel with two bags and place them in the trunk, so they knew that he had at least constructive possession or ownership of the contents of it based on the fact that he had carried them out to the car. And all of that was on, they took photos of that happening. As, back to one of the points you made, you said that the law enforcement said that these two women looked very similar. Did they know Brittany Brazil at the time? Did they know both of them as suspected folks involved in drug trafficking? My understanding is yes. I don't have a record site for that, but I think Brittany Brazil's name was generally known to them as being involved in the drug game in Rapid City. And Travis Anderson, I can say, did testify at trial that Brittany's role in the conspiracy was to sort of be Ward's driver. That was at page 210. So that was sort of her responsibility, was that she would get a few pills on the side for driving him around. And so, you know, knowing that, it made sense that she was there to pick him up on that day. So when they're dealing, trying to deal with these bags on scene, they had the basis for the stop for the traffic violation, failure to yield. When it was Maranza Ball, they thought she didn't have a license. Turns out it wasn't. But then they also still had the collective knowledge doctrine for stopping the vehicle based on their larger drug investigation. So in trying to deal with these bags, they don't know who Mr. Ward is on scene. He's denied ownership of the bags, and then periodically he says that some of the items are his, then says that they're not. And so at this point, I don't, the defense is arguing that he should have taken them to be exculpatory, but if they're not his, then law enforcement really didn't have a legal right to take these bags. If they're saying that, if he's saying these are not my bags, the items themselves are not inherently contraband, they're just personal type belongings. Legally, there's just no basis that officers should have taken those on scene, because what right do they have to those? But the bags were investigated or searched, looked into. Correct. And I think there were photographs as well. That's right, Your Honor. And so to the extent that the defendant is arguing that there's any prejudice, he had the benefit of the pictures to say, hey, those bags were not mine, see, there's a prescription bottle that has someone else's name on it. He got to present that at trial. So they're really, to the extent there's not DNA evidence, correct, we don't have that. However, he did have the ability to argue those were not my bags through the photographs that were taken. And then also logistically, the officers had testified that they simply can't take all the belongings of a car every time they do that. Evidence holdings would be filled up in a matter of days if they did that. So we do know what was in the bags. The contraband items were seized, and the rest was photographed. So the defendant is also arguing that he should have been allowed to leave, but he was not identified until he was back at the jail and had to be fingerprinted, and it turns out he had some sort of parole hold out of Colorado. So under this court's case law, the stop was more than just a minor traffic violation where officers are just on like a routine patrol situation. It was part of this larger drug investigation, part of which the point was to identify who this person is, and they weren't able to do that. And so that takes it out of some of the case law where these officers are just conducting normal day-to-day traffic enforcement activities and happen upon a drug dealer. They had this particularized suspicion that he was engaged in criminal activity, and in addition to that, the defendant was providing them additional reasonable suspicion on scene by engaging in these lies and half-truths and confusion about the bags and their contents and such. So at the end of this, the district court ruled pre-trial, also revisited the issue of the jury instruction, that there just was not an inference that the officers had ever acted in bad faith in not seizing these bags. There was no inherent exculpatory value that would have been immediately present to them on scene, that they should have known to take these. This was not some sort of, you know, murder or violent crime investigation where DNA is maybe more at the forefront of an officer's mind. And so under this Court's cases in Wadlington, Tyrement, Davis, the defendant has to have more than mere speculation that this evidence would have been helpful to him. And so given that he had the benefit of the pictures and the officer's testimony, that standard simply wasn't met here, and he was not prejudiced by the Court's decision not to give the jury instruction in this case. We would ask that this Court affirm on all of the issues and uphold the judgment of the district court. Thank you. Thank you, Ms. Rich. Mr. Rush, your rebuttal. First of all, at trial, it was noted that Dr. Hobby reviewed the police reports and the EMT report. The EMT report, Kyle's side had said, I had a seizure. His girlfriend had said, I had a seizure. The police reports of his ex-wife said that he had a seizure disorder. The EMT said, I can't tell whether it's a seizure or an overdose. And Dr. Hobby's initial testimony was, this is consistent, and that is consistent, and that is consistent with an overdose. However, he's only looking at a police report of statements that were made, not reviewing any medical evidence. Now, on cross and recross and cross and recross, he would say, yes, this is consistent with an overdose. And I would ask him, is this consistent with a seizure? And the answer is, it depends upon what kind of seizure. We don't know what kind of seizures Mr. Seid had. I don't have his medical reports. I haven't reviewed his medical records. So he ends up leaving this issue with this. I cannot tell to a degree of medical certainty whether this was a seizure or whether this was an overdose. And if he can't make that determination and the EMT can't make the determination, this Court should not allow a juror to arrive at a but-for test of something that requires expert medical testimony. It's just simply not allowable. Thank you. Thank you, Mr. Rush.